EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
GREGORY A. OTT
Deputy Attorney General
DORIAN JUNG
Deputy Attorney General
State Bar No. 200116
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-1342
  Fax: (415) 703-1234
  Email: dorian.jung@doj.ca.gov
Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **DAVID HUNTER,**<br><br>                    Petitioner,<br><br>    v.<br><br>**TOM FELKER, Warden,**<br><br>                    Respondent. | C 07-3292 MHP (PR)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |

**STATEMENT OF THE CASE**

On July 6, 2004, the District Attorney of Alameda County filed a second amended information against petitioner David Hunter and codefendant Victor Hernandez, charging one count of second degree robbery, in violation of Cal. Penal Code §§ 211 and 212.5(c), one count of assault with a firearm, in violation of Cal. Penal Code § 245(a)(2), and one count of possession of a firearm by a felon, in violation of Cal. Penal Code § 12021(a)(1). CT 327-31. In connection with the robbery count, the information alleged that petitioner Hunter personally used a firearm within the meaning of Cal. Penal Code § 12022.5(a)(1), and personally discharged a firearm within the

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Hunter v. Felker* - C 07-3292 MHP (PR)

1

meaning of Cal. Penal Code § 12022.53(c). CT 328. The information further alleged that petitioner had suffered six prior convictions. CT 332-35.[1]

On July 7, 2004, codefendant Hernandez pleaded guilty to two counts of the amended information, while petitioner pleaded not guilty and denied the firearm use and prior conviction allegations. CT 347.

On July 14, 2003, the jury convicted petitioner of assault with a firearm and being a felon in possession of a firearm. CT 423-25. The court declared a mistrial on the robbery count after the jury deadlocked. CT 425-26. After a bifurcated proceeding, the trial court found four prior conviction allegations to be true, and struck the remaining two. CT 427-28.

On August 24, 2004, the trial court sentenced petitioner to the total determinate term of 14 years. CT 448-49. Petitioner appealed. CT 567. On February 6, 2006, the California Court of Appeal affirmed petitioner's conviction. Exh. F.

On March 16, 2006, petitioner filed a petition for review. Exh. G. On May 12, 2006, the California Supreme Court issued an order denying the petition. Exh. H.

On June 22, 2007, petitioner filed the instant petition pursuant to 28 U.S.C. § 2254.

**STATEMENT OF FACTS**

Respondent takes the following statement of facts from the opinion of the California Court of Appeal:

> The victim, David Delvin, who was described as "a street-level drug dealer," was the chief prosecution witness at trial. Appellant and co-defendant Victor Hernandez called Delvin at his girlfriend's residence in San Leandro during the early morning hours of April 10, 2003, and arranged to purchase methamphetamine. They all met at the residence and they moved to the backyard. Delvin gave Hernandez a half-ounce bag of methamphetamine to inspect. Hernandez made some comments about the drugs while appellant excused himself to urinate. Appellant walked towards a nearby fence. Moments later, appellant returned pointing what appeared to be a semiautomatic pistol at Delvin, ordering him to hand over his money. Delvin instead rushed appellant and wrestled with him. Appellant fired his gun twice, missing Delvin. While the two continued to wrestle, they moved closer to a gazebo. Delvin threw appellant into the gazebo, causing appellant to fall to the

---

1. "CT" denotes the Clerk's Transcript on Appeal, lodged with the answer as Exh. A. "RT" denotes the Reporter's Transcript of Trial Proceedings, lodged with the answer as Exh. B.

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Hunter v. Felker* - C 07-3292 MHP (PR)

ground. Delvin got on top of appellant and began hitting him. Hernandez then walked toward them with a handgun and fired once at Delvin, striking him in the left buttock. Delvin let go of appellant, who then fled with Hernandez over the fence into a nearby apartment complex.

The only independent eyewitness to testify at trial was 14-year-old Eli M. who lived with his mother in the residence where the shooting took place. He recalled hearing an argument, followed by a demand from appellant to "give me your money." Eli M. saw appellant and Delvin "punching each other" while Hernandez pulled out a gun and fired it three times at Delvin. Eli M. testified he did not see appellant with a gun, although he "wasn't really looking at him."

Hernandez was apprehended shortly after the shooting, but appellant was not immediately apprehended. Also, shortly after the shooting, appellant's brother, Rocky Neves, was spotted throwing a white plastic bag over a fence by a dumpster in the vicinity of the shooting. The bag was searched and found to contain a black semiautomatic pistol.

The day after the shooting, appellant went to a friend's house. The friend, Jeff Hogue, told police that appellant showed him a silver handgun and asked him to hide it, but Hogue refused. Hogue also said that appellant told him that he was involved in a robbery that "went bad," and that he needed to get out of town.

On May 3, 2003, Oakland police spotted appellant in a car and gave chase over several city blocks. During the chase appellant lost control going around a corner and spun his car 180 degrees. Appellant eventually abandoned his still-moving vehicle in a DMV parking lot and led police on a foot chase while his car ran into the DMV building. He was eventually arrested with the help of a police dog.

Exh. F at 2-3 (internal footnotes omitted).

## STANDARD OF REVIEW

Habeas corpus review in this case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), by which "Congress placed a new restriction on the power of the federal courts to grant writs of habeas corpus to state prisoners." *Williams v. Taylor*, 529 U.S. 362, 399 (2000). The AEDPA prohibits relief on federal constitutional claims unless the state ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Hunter v. Felker* - C 07-3292 MHP (PR)

3

decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412-13. The test is objective, and an unreasonable application is not merely incorrect or erroneous. *Id.* at 410-11. A "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

"It is not enough that a federal habeas court, in its independent review of the legal question is left with a firm conviction that the state court was 'erroneous.'" *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation and edits omitted). Even a showing of "clear error" falls short of the established standard of objective unreasonability. *Id.* Where the state court denies relief without a reasoned opinion, the federal habeas court does not review the claim de novo, but does "perform an 'independent review of the record' to ascertain whether the state court decision was objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Also, state court factual determinations are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden of showing that the state court's decision was unreasonable. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

Even if the state court's ruling is contrary to or an unreasonable application of Supreme Court precedent, that error justifies overturning the conviction only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* standard applies to all § 2254 cases, regardless of the type of harmless error review conducted by the state courts. *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007).

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Hunter v. Felker* - C 07-3292 MHP (PR)

4

# ARGUMENT

## THE STATE SUPREME COURT[2] DID NOT UNREASONABLY APPLY CLEARLY ESTABLISHED FEDERAL LAW BY REJECTING PETITIONER'S CLAIM THAT HE DID NOT HAVE NOTICE THAT HE COULD BE CONVICTED UNDER AN AIDING AND ABETTING THEORY

"The petition alleges that Hunter was denied his due process and Sixth Amendment rights to be clearly informed of the nature and cause of the charge against him so that he could prepare a defense. See, e.g., Petition for review, p.3 (court of appeal's decision that several target offenses could support vicarious liability even though they had not been identified at trial or defined for jury resulted in a 'denial of his Constitutional right to due process of law, as he was never given notice either before or during his trial that he could be found guilty of assault with a deadly weapon on any basis other than his own personal actions or because he was allegedly participating in a robbery'); id. at 18 (right to due process violated by the instruction directing jury to find Hunter guilty of armed assault if jury 'believed that he was involved in some other unidentified offense without giving him notice of what other alleged crimes he needed to defend against.')"  Order to Show Cause at 2.

The state supreme court did not unreasonably deny relief on this claim. The Sixth Amendment "guarantees a criminal defendant a fundamental right to be clearly informed of the

---

2. Petitioner first raised the present claim in his petition for review, having failed to allege a violation of his federal constitutional right to notice of the charges against him in his briefing to the state court of appeal. Exh. C. Petitioner's procedurally defective presentation of his claims to the state supreme court fails to exhaust it. "Submitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation." Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994) (citing Castille v. Peoples, 489 U.S. 346 (1989)). Thus, it is not enough to simply present the federal claim in a petition for discretionary review to the state's highest court; the same federal claim must have been presented also to lower reviewing courts. Casey v. Moore, 386 F.3d 896, 916-18 (9th Cir. 2004) ("to exhaust a habeas claim, a petitioner must properly raise it on every level of direct review"). Therefore, there was no appellate exhaustion where the intermediate state court was presented only with state law claims even though the discretionary petition to the highest court did present federal claims. An issue raised for the first and only time on petition for discretionary review is inadequate to exhaust under Castille v. Peoples, and the California Supreme Court will ordinarily not consider such claims. See California Rules of Court 8.500(c)(1) ("As a policy matter, on petition for review the Supreme Court will normally not consider an issue that the petitioner failed to timely raise in the Court of Appeal"). Petitioner's present claim is therefore unexhausted. This court may nevertheless deny the claim on the merits. 28 U.S.C. § 2254(b)(2).

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Hunter v. Felker* - C 07-3292 MHP (PR)

5

nature and cause of the charges in order to permit adequate preparation of a defense." *Sheppard v. Rees*, 909 F.2d 1234, 1236 (9th Cir. 1989). However, there is no clearly established federal law which guarantees a criminal defendant the fundamental right to be clearly informed that the prosecution will seek conviction on a theory of direct perpetration or aiding and abetting liability prior to the issuance of jury instructions.

Under California state law, direct perpetrators and aiders and abettors have long been treated as principals with equal liability (Cal. Penal Code §§ 31, 32) and allegations of principal status suffice to proceed on accomplice theories (Cal. Penal Code § 971).[3/] Thus, "[i]n California one may be convicted of aiding and abetting without the accusatory pleading reciting the aiding and abetting theory so long as defendant is charged in that pleading as a principal to the substantive offense and thus receives notice of the charge against him." *People v. Greenberg*, 111 Cal.App.3d 181, 188 (1980); *see also People v. Kennedy*, 116 Cal.App.2d 273, 275-76 (1953); *People v. Nolan*, 144 Cal. 75, 79-80 (1904) (accessories after the fact); *People v. Gallego*, 52 Cal.3d 115, 188 (1990) (conspirators). In light of this long established California state law, petitioner must have reasonably understood that he could be prosecuted under a theory of aiding and abetting liability.

Moreover, constitutionally adequate notice of a charge can be provided to a defendant by means other than the charging document. *Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992); *Sheppard*, 909 F.2d at 1236 n. 2. In *Morrison*, the prosecutor provided constitutionally adequate notice of a felony-murder theory by presenting evidence of Morrison's intent to commit robbery and by requesting felony-murder instructions at the initial charge conference. *Morrison*, 981 F.2d at 428-29. It was sufficient that defense counsel had two days to prepare a closing argument after the instructions were settled. *Id.* at 428. The Ninth Circuit Court of Appeals concluded that "[n]o

---

3. Cal. Penal Code § 971 provides:

The distinction between an accessory before the fact and a principal, and between principals in the first and second degree is abrogated; and all persons concerned in the commission of a crime, who by the operation of other provisions of this code are principals therein, shall hereafter be prosecuted, tried and punished as principals and no other facts need be alleged in any accusatory pleading against any such person than are required in an accusatory pleading against a principal.

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Hunter v. Felker* - C 07-3292 MHP (PR)

ambush occurred at Morrison's trial," *id.*, which distinguished *Morrison* from *Sheppard*, where "[a]t no time during pretrial proceedings, opening statements, or the taking of testimony was the concept of felony-murder raised, directly or indirectly." *Sheppard*, 909 F.2d at 1235. Indeed, in *Sheppard*, the state expressly conceded that "a pattern of government conduct affirmatively misled the defendant, denying him an effective opportunity to prepare a defense" against the felony-murder charge. *Id.* at 1236. The state went so far as to admit that the "'defendant was ambushed.'" *Id.*

Here, petitioner cannot claim that he was ambushed by a theory of aiding and abetting liability. On June 7, 2004, the day before trial started, the prosecution requested CALJIC No. 3.02, the jury instruction on aiding and abetting liability. CT 342. This would have given petitioner notice that the prosecution was proceeding on a theory of aiding and abetting liability. For these reasons, the state supreme court did not unreasonably deny relied on petitioner's claim of inadequate notice of the charged offenses.

Assuming that petitioner could establish that the state supreme court unreasonably denied relief on the foregoing claim, he cannot show that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. at 637. Here, the evidence of petitioner's guilt was overwhelming. Two eyewitnesses, including the victim, identified petitioner robbing and assaulting the victim. Petitioner himself told another witness that he had participated in a robbery that "went bad." In light of this strong evidence, no substantial and injurious effect from the alleged evidence appears. Petitioner therefore is not entitled to relief under the AEDPA.

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Hunter v. Felker* - C 07-3292 MHP (PR)

7

**CONCLUSION**

For the foregoing reasons, respondent respectfully requests that the order to show cause be discharged, and the petition be denied.

Dated: April 8, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

GREGORY A. OTT
Deputy Attorney General


/s/ Dorian Jung
DORIAN JUNG
Deputy Attorney General

Attorneys for Respondent

DJ:cc

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Hunter v. Felker* - C 07-3292 MHP (PR)

8