United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HUNTER (CDCR # H-41621),<br><br>Petitioner,<br><br>v.<br><br>TOMMY FELKER, warden,<br><br>Respondent.<br>_____ / | No. C 07-3292 MHP (pr)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

David Hunter, currently incarcerated at High Desert State Prison, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before the court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

The California Court of Appeal described the evidence regarding the crime:

The victim, David [Devlin], who was described as "a street-level drug dealer," was the chief prosecution witness at trial. Appellant and co-defendant Victor Hernandez called [Devlin] at his girlfriend's residence in San Leandro during the early morning hours of April 10, 2003, and arranged to purchase methamphetamine. They all met at the residence and they moved to the backyard. [Devlin] gave Hernandez a half-ounce bag of methamphetamine to inspect. Hernandez made some comments about the drugs while appellant excused himself to urinate. Appellant walked towards a nearby fence. Moments later, appellant returned pointing what appeared to be a semiautomatic pistol at [Devlin], ordering him to hand over his money. [Devlin] instead rushed appellant and wrestled with him. Appellant fired his gun twice, missing [Devlin]. While the two continued to wrestle, they moved closer to a gazebo. [Devlin] threw appellant into the gazebo, causing appellant to fall to the ground. [Devlin] got on top of appellant and began hitting him. Hernandez then walked toward them with a handgun and fired once at [Devlin], striking him in the left

>buttock. [Devlin] let go of appellant, who then fled with Hernandez over the fence into a nearby apartment complex.
>
>The only independent eyewitness to testify at trial was 14-year-old Eli Mahoney who lived with his mother in the residence where the shooting took place. He recalled hearing an argument, followed by a demand from appellant to "give me your money." Eli Mahoney saw appellant and [Devlin] "punching each other" while Hernandez pulled out a gun and fired it three times at [Devlin]. Eli Mahoney testified he did not see appellant with a gun, although he "wasn't really looking at him."
>
>Hernandez was apprehended shortly after the shooting, but appellant was not immediately apprehended. Also, shortly after the shooting, appellant's brother, Rocky Neves, was spotted throwing a white plastic bag over a fence by a dumpster in the vicinity of the shooting. The bag was searched and found to contain a black semiautomatic pistol.
>
>The day after the shooting, appellant went to a friend's house. The friend, Jeff Hogue, told police that appellant showed him a silver handgun and asked him to hide it, but Hogue refused. Hogue also said that appellant told him that he was involved in a robbery that "went bad," and that he needed to get out of town.

Resp. Exh. G, California Court of Appeal Opinion ("Cal. Ct. App. Opinion"), pp. 2-3. At trial, Hogue recanted the statements he earlier had made to the police.

At a jury trial in 2004 in Alameda County Superior Court, Hunter was convicted of assault with a firearm and being a felon in possession of a firearm. Cal. Penal Code §§ 245(a)(2), 12021(a)(1). The court declared a mistrial on the robbery count after the jury deadlocked. The court found the sentence enhancement allegations of four prior convictions to be true. Hunter was sentenced on August 24, 2004 to a total of fourteen years in prison.

Hunter appealed. The California Court of Appeal affirmed the conviction for the assault with a firearm and reversed the conviction for being a felon in possession of a firearm. The California Supreme Court denied Hunter's petition for review.

In his federal habeas petition, Hunter alleged that he was denied his due process and Sixth Amendment rights to be clearly informed of the nature and cause of the charge against him so that he could prepare a defense. Hunter also urged that the state appellate court had misapplied state law in affirming the conviction, but the state law claims were dismissed because federal habeas review is not available to remedy state law errors. The court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer and Hunter filed a traverse. The matter is ready for a decision on the merits.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged conviction occurred in Alameda County, California, within this judicial district.  28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  State court remedies were exhausted for the claims in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

**DISCUSSION**

A.   Notice Of The Charges

Hunter contends that he was denied his due process and Sixth Amendment rights to be clearly informed of the nature and cause of the charge against him so that he could prepare a defense.  He contends that he only received notice that he might be convicted of assault for personally assaulting Devlin with a firearm, or for aiding and abetting a robbery in which Hernandez shot Devlin, but not that he could be convicted under the natural and probable consequences theory based on him accompanying Hernandez "on a trip to buy drugs or engaged in unspecified wrongful conduct other than a robbery." Petition for review, p. 16.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI.  This right to notice of what one is being charged with is among the most basic of procedural protections.  "It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." Cole v. Arkansas, 333 U.S. 196, 201 (1948); see Calderon v. Prunty, 59 F.3d 1005, 1009 (9th Cir. 1995).  This guarantee applies to the states through the Due Process Clause of the Fourteenth Amendment. Gautt v. Lewis, 489 F.3d 993, 1003 (9th Cir. 2007), cert. denied, 128 S. Ct. 1477 (2008).

It is clearly established law for purposes of 28 U.S.C. § 2254(d) that a criminal defendant has a Sixth Amendment right to be informed of any charges against him, and that a charging document, such as an information, is the means by which such notice is provided.

4

1 Gautt, 489 F.3d at 1004 (citing Cole, 333 U.S. at 201).  The Supreme Court "has never held
2 that non-charging document sources can be used to satisfy the Constitution's notice
3 requirement" where the defendant claims that he never received sufficient notice of the
4 underlying charge.  Id. at 1009 (defendant charged under one subsection of a statute could
5 not be sentenced under another subsection that had more requirements and carried a stiffer
6 penalty).  However, the habeas court can look to sources other than the information for
7 evidence that the defendant did receive adequate notice of the theory of a case (e.g., felony
8 murder) if he received adequate notice of the crime charged.  See id.

9       To determine whether a defendant has received fair notice of the charges against him,
10 the court looks first to the information, the principal purpose of which is to provide defendant
11 with a description of the charges in sufficient detail to enable him to prepare a defense.  See
12 James v. Borg, 24 F.3d 20, 24 (9th Cir.), cert. denied, 513 U.S. 935 (1994).  An information
13 is not constitutionally defective if it states "'the elements of an offense charged with
14 sufficient clarity to apprise a defendant of what to defend against,'" Miller v. Stagner, 757
15 F.2d 988, 994 (9th Cir.) (quoting Russell v. United States, 369 U.S. 749, 763-64 (1962)),
16 amended, 768 F.2d 1090 (9th Cir. 1985), cert. denied, 475 U.S. 1048, and cert. denied, 475
17 U.S. 1049 (1986), even if it does not state the method by which the crime was committed,
18 Calderon, 59 F.3d at 1009.  "An explicit citation to the precise statute at issue is best, but a
19 'brief factual recitation in the information' can also suffice.'"  Gautt, 489 F.3d at 1004
20 (citation omitted).

21       Here, the charging document that was operative when trial started was the first
22 amended information filed on September 24, 2003, which charged both Hunter and his co-
23 defendant, Victor Hernandez.  CT 122-130.  The first count of the first amended information
24 charged them with second degree robbery, identified the applicable Penal Code section, and
25 alleged that "on or about April 10, 2003, in the County of Alameda, State of California, said
26 defendant(s) did unlawfully, and by means of force and fear take personal property from the
27 person, possession, and immediate presence of David Devlin."  CT 122.  As to the first count,
28 there were allegations of personal use of a firearm by Hunter, as well as personal and

intentional discharge of a firearm by Hunter and Hernandez. CT 123. The second count charged both defendants with assault with a firearm, identified the applicable Penal Code section, and alleged that "on or about April 10, 2003, in the County of Alameda, State of California, said defendant(s) did willfully and unlawfully commit an assault on David Devlin with a firearm." CT 124. As to the second count, there were allegations of personal use of a firearm and personal infliction of great bodily injury by co-defendant Hernandez. CT 124-125. (During trial, a second amended information was filed that charged the same crimes and made minor changes in the sentence enhancement allegations not relevant to Hunter's habeas petition. CT 327-336.)

Hunter has not shown that his due process and Sixth Amendment rights to notice of the charges were violated. The first amended information sufficiently apprised Hunter of the criminal charges against which he had to defend: he was informed of the crimes by name (i.e., robbery and assault with a firearm), the relevant sections of the California Penal Code, the date of the offense, and the name of the victim. Most importantly, Hunter was not charged under one section of the Penal Code and convicted under another. Cf. Cole, 333 U.S. at 202 (due process violated where defendant was charged under one criminal code section but his conviction was upheld under a different criminal code section); Gautt, 489 F.3d at 998 (notice was improper where a defendant was charged under one section of the California Penal Code, but convicted under another section, which carried a lengthier sentence).

B.     Notice Regarding Natural And Probable Consequences Doctrine

A central theme of the petition is that Hunter does not think he received adequate notice of the way California's natural and probable consequences ("NPC") doctrine would apply to his case. The NPC doctrine provides that an aider and abettor is not only guilty of the crime he aids/abets, but also is guilty "of any other crime committed by a principal which is a natural and probable consequence of the crime[s] originally aided and abetted." CALJIC 3.02. The NPC doctrine provided a possible basis of liability here because of the criminal action as suggested by the evidence at trial: During a visit to a drug dealer (i.e., the victim in

6

this case) for the ostensible purpose of buying drugs, Hunter drew his gun and demanded money from the victim, Hunter then shot at the victim twice and missed; Hunter and victim then wrestled and as the victim gained the upper hand (by getting atop Hunter and hitting him), the co-defendant approached with a gun and shot the victim in the rear end. On this fact pattern, the jury found Hunter guilty of assault with a deadly weapon but deadlocked on the robbery charge. This fact pattern, according to the California Court of Appeal, would support a finding that Hunter was guilty of assault with a firearm based on his own actions as a perpetrator. Cal. Ct. App. Opinion, p. 11. Hunter, however, had challenged the NPC instruction on appeal, contending that it improperly did not require the jurors to unanimously agree as to which originally contemplated crime the defendant aided and abetted.

At Hunter's trial, the jury was instructed:

> One who aids and abets in the commission crime or crimes is not only guilty of those crimes but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crimes originally aided and abetted.
>
> In order to find the defendant guilty of the crimes of robbery and/or assault with a firearm as charged in counts one and two, you must be satisfied beyond a reasonable doubt that one, the crime or crimes of robbery and/or assault with a firearm were committed; two, that the defendant aided and abetted that or those crimes; three, that a co-principal in that crime committed the crime of robbery; and four, the crime of assault with a firearm was a natural and probable consequence of the commission of the crime of robbery.
>
> In determining whether a consequence is natural and probable, you must apply an objective test based [sic] on what the defendant actually intended, but what on [sic] a person of reasonable and ordinary prudence would have expected likely to occur.
>
> The issue is to be decided in light of all circumstances surrounding the incident. A natural and probable consequence is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened.
>
> Probable means likely to have happened.
>
> You are not required to agree unanimously as to what, as to which originally contemplated crime the defendant aided and abetted so long as you are satisfied beyond a reasonable doubt and unanimously agree that the defendant aided and abetted in the commission of and [sic] identified and defined target crime, and that crime [sic] assault with a firearm was a natural and probable consequence of the commission of that target crime.

RT 685-86 (emphasis added); see CALJIC 3.02.

7

Hunter argues that the last quoted paragraph improperly failed to require unanimity as to the target offense, and that the deadlock on the robbery charge (which was identified in the first quoted paragraph) left the jury able to find him guilty based on any crime or even non-criminal activity, i.e., he contends he could have been held liable based on an assault with a firearm that was a natural and probable consequence of any unidentified crime or even noncriminal activity. He casts this as a notice problem – contending that he did not receive notice that the NPC doctrine would be applied as it was in the state courts and did not receive notice of the crimes against which he had to defend.

Hunter's argument is largely directed at the California Court of Appeal's interpretation of the NPC doctrine. That court concluded that there was no error in the NPC instruction's failure to list all the possible crimes that could be target offenses for the NPC doctrine to apply. The court did not accept Hunter's suggestion that the NPC instruction and the court's response to a jury question allowed the jury to run amuck. The instruction was not improper in not identifying a particular target crime other than robbery because California law did not require unanimity as to the underlying target crime. Cal Ct. App. Opinion, p. 14. The court explained that the jurors had been instructed that "they had to be satisfied, beyond a reasonable doubt, that the crime [Hunter] actually committed was a natural and probable consequence of the commission of the crime or crimes which he aided and abetted." Cal. Ct. App. Opinion, pp. 14-15. The state appellate court also concluded that the jury did not apply the NPC doctrine to hold Hunter liable for an assault that occurred as the natural and probable consequence of noncriminal activity. Cal. Ct. App. Opinion, p. 15. The prosecutor's theory was that Hunter and Hernandez went to Devlin's residence to rob him, both Hunter and Hernandez were armed, Hunter shot and missed Devlin, and Hernandez shot and hit Devlin as Devlin wrestled with Hunter. "[T]here was no evidence that [Hunter] aided and abetted any noncriminal behavior which led, as a natural and probable consequence, to [Devlin] being shot, and neither the prosecution nor the defense mentioned any such behavior in their closing arguments to the jury. Under these circumstances, the trial court's failure to specify all of the possible target crimes could not lead the jury to misapply the

8

natural and probable consequences doctrine by convicting [Hunter] of assault based on the theory that he assisted or encouraged a noncriminal act." Id.

Hunter disagrees strenuously with the way the California Court of Appeal applied the NPC doctrine to his case. However, the federal habeas court does not review claims of violations of state law or for alleged error in the interpretation or application of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Little v. Crawford, 449 F.3d 1075, 1082 (9th Cir. 2006), cert. denied, 127 S. Ct. 2945 (2007).

To the extent that Hunter's petition could be understood to argue that the way the state court applied the NPC doctrine to his case deprived him of his constitutional right to notice of that which he must defend against, the habeas standard in 28 U.S.C. section 2254(d) presents an insurmountable obstacle. He has not identified any clearly established law as set forth by the U.S. Supreme Court that requires the prosecutor to give notice to a criminal defendant of his theory of the case as a matter of constitutional law, or that requires that the charging document give notice as to the way state law operates, or that requires that the charging document give notice as to the way the state court of appeal will apply state law.

Hunter analogizes his situation to the one in Sheppard v. Rees, 909 F.2d 1234 (9th Cir. 1989), but reliance on that case does not help him because it is not a Supreme Court case. Sheppard also was a pre-AEDPA case, and therefore not subject to the version of 28 U.S.C. § 2254(d) that now limits habeas relief. Even if Sheppard could provide guidance, it would not show that Hunter is entitled to relief because, unlike Sheppard, Hunter's prosecutor did not mislead him about the theory of the case. Here, the prosecutor explained in his opening statement his theory that both Hunter and Hernandez fired their weapons at the victim, and Hernandez's shot caused great bodily injury to the victim. RT 36. The prosecutor explained that Hunter and Hernandez went to Devlin's house to rob Devlin of drugs and money under the pretext of buying drugs. RT 36-37. He also mentioned that Hunter fired his handgun at Devlin twice and then struggled with him until Hernandez told Devlin to get off Hunter and then shoot Devlin in the buttocks. RT 38. There was no factual surprise to Hunter. Respondent also argues that, even if notice of the theory of the case was

9

required, it was provided by virtue of the prosecutor's request for inclusion of the NPC instruction, CALJIC 3.02, the day before trial started. The record does not support this argument: the list of requested jury instructions was filed the day before closing arguments were made, rather than the day before trial started. See CT 342, 350. Nonetheless, this is not a case where the prosecutor misled the defense about his theory of the case.

The principal purpose of the charging document is to provide a defendant with a description of the charges against him in sufficient detail to enable him to prepare a defense. See James, 24 F.3d at 24. The first amended information adequately informed Hunter of the charges against which he needed to defend. He is not entitled the writ.

C.   Request for Evidentiary Hearing.

In his traverse, Hunter requests an evidentiary hearing to explore the jurors' deliberative process to show how they reached the verdict. He wants to show that the jurors found him guilty based on an impermissible aiding and abetting theory. "[L]ong-recognized and very substantial concerns support the protection of jury deliberations from intrusive inquiry." Tanner v. United States, 483 U.S. 107, 127 (1987). Federal Rule of Evidence 606(b) and California Evidence Code section 1150(a), for example, prohibit the use of juror testimony to impeach a verdict when that testimony relates to intrinsic matters, i.e., the internal, mental processes by which the verdict was rendered. See id. at 116-27 (discussing Fed. R. Evid. 606(b); People v. Cox, 53 Cal. 3d 618, 695-96 (1991), cert. denied, 502 U.S. 1062 (1992) (discussing Cal. Evid. Code § 1150(a)). Hunter's request does not fall under any of the exceptions set forth in Fed. R. Evid. 606(b), which allows juror testimony about "(1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form." Hunter cannot use an evidentiary hearing to explore the jurors' deliberative processes. Additionally, the matter he wants to explore at an evidentiary hearing would not enable him to establish his entitlement to relief on his Sixth Amendment notice claim. Hunter's request for an evidentiary hearing is denied.

**CONCLUSION**

The petition for writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: May 4, 2009

Marilyn Hall Patel
United States District Judge